UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Eejipp Ala,

      Petitioner,

      v.                                            Civil Action No. 1:10-CV-221

State of Vermont,

      Respondent.

## REPORT AND RECOMMENDATION
(Docs. 1 and 7)

Petitioner Eejipp Ala, a Vermont inmate proceeding *pro se*, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Ala was convicted in 2005 in state court after pleading guilty to charges of aggravated assault and cocaine possession. He filed a direct appeal, arguing that the trial judge had denied him his Sixth Amendment right to proceed *pro se* and had failed to ensure that his plea was voluntary. The Vermont Supreme Court affirmed the convictions. Ala then filed a petition for post-conviction review ("PCR"), arguing that the trial judge had coerced him into pleading guilty, and that trial counsel was ineffective. The state court denied the petition, and the Vermont Supreme Court again affirmed on appeal.

Ala now comes to this Court seeking habeas corpus relief. His § 2254 petition claims: (1) that his convictions were the result of an unlawful search and seizure; (2) that the trial judge and defense counsel coerced him into pleading guilty; (3) that defense counsel was ineffective for failure to properly investigate, call witnesses, and submit

appropriate objections and defenses; and (4) that the trial judge made various errors and demonstrated bias.

Respondent has opposed the petition in a motion for summary judgment on the merits. For the reasons set forth below, I recommend that the motion for summary judgment (Doc. 7) be GRANTED, that the petition (Doc. 1) be DENIED, and that this case be DISMISSED.

## Factual Background

In March 2004, Ala was charged with possession of marijuana, possession of cocaine, and attempted second-degree murder. The charges arose out of an incident in which he shot at police officers who had entered his home with a search warrant. As described by Respondent in the pending motion for summary judgment, "[w]hen officers entered the home and identified themselves the petitioner fired several shots from a handgun through a bedroom doorway in their direction. Marijuana, more than three ounces of cocaine and firearms were found in the home." (Doc. 6 at 1.)

The trial court ordered a competency evaluation, and subsequently determined that Ala was competent to stand trial. In January 2005, Ala asked the court to dismiss the case for lack of a speedy trial, and to recognize his right to proceed *pro se*. Defense counsel expressed concern that Ala was not competent to waive his right to counsel, and the court ordered another evaluation. After the second evaluation, the court again found that Ala was competent. At a hearing on March 15, 2005, Ala expressed his desire to represent himself, but eventually negotiated a plea agreement with the assistance of his attorney. The court accepted Ala's pleas, finding them to have been entered voluntarily, with full

knowledge of the consequences, and supported by an appropriate factual basis.  (Doc. 7-2 at 23.)  The plea agreement resulted in a sentence of ten to fifteen years on a reduced charge of aggravated assault, and five to ten years, all suspended, for possession of cocaine.

Ala appealed his convictions.  His first claim on appeal was that "the district court denied him his constitutional right to represent himself without determining whether his decision to proceed pro se was made knowingly and intentionally."  *State v. Ala*, No. 2005-156, 2006 WL 5866275, at *1 (Vt. June Term 2006).  Ala further argued that the trial court failed to make a sufficient inquiry into whether his plea was knowing and voluntary.  *Id.* at *2.  Based upon its review of the March 15, 2005 transcript, the Vermont Supreme Court rejected both arguments:

> The transcript of the hearing reveals the following.  The court advised defendant that he would lose his case if he proceeded on his own because he did [not] know the rules of criminal procedure and would be up against an experienced prosecutor.  The court explained that often defendants become frustrated with attorneys who encourage them to negotiate a settlement with the prosecution, but that attorneys have been trained to analyze the merits of a case.  The court stated that if defendant were provided backup counsel, he would still have to examine witnesses, which would be very foolish of him.  The court then proceeded to ask defendant's attorney when he would be available for trial.  After settling on the trial dates, the court asked defendant if he wanted to negotiate a settlement of the case or go to trial.  Defendant responded that he was guilty of shooting at the police officer and of possessing cocaine.  When the court related to defendant an incident concerning a former client who had refused to negotiate, defendant stated that he had not heard back after responding to an earlier offer from the State.  When the court emphasized that the trial was scheduled to take place in two weeks, defendant told the court that he wanted to start negotiating.  He also responded "[a]ll right" when the court asked him if he wanted to talk to his attorney before negotiating with the State.  Following a recess, defendant acknowledged that the parties had reached a plea agreement.

*Id.* at 1.   With respect to Ala's desire to proceed *pro se*, the Vermont Supreme Court found that "the above facts demonstrate that . . . not only did defendant tell the court that he wanted to start negotiating, but he agreed to confer with his attorney and have his attorney be part of the negotiating process."   *Id.* at *2.   The court further found that "at no point in the colloquy did defendant indicate that he still wanted to represent himself."   *Id.*

As to Ala's argument that the Rule 11 colloquy was inadequate, the Vermont Supreme Court again found that the March 15, 2005 transcript belied his claim.

> The record reflects that: (1) defendant told the court that he wanted to start negotiating; (2) the court explained to defendant that he could confer with his attorney, who would speak to the prosecutor; (3) defendant agreed to that procedure; (4) there was an immediate recess, after which defendant confirmed he had reached a plea agreement with the State; (5) defendant acknowledged that, by entering into the agreement, he was waiving his right to a jury trial, wherein the State would have had the burden of proving the charges against him, and he would have had the opportunity to present his defense; (6) defendant acknowledged factual bases for the charges; and (7) defendant entered his pleas after acknowledging the maximum sentences that could be imposed if he were convicted of the charges following trial.   At the end of its colloquy with defendant, the court stated that it was finding that defendant had entered his pleas voluntarily with knowledge of the consequences.   Defendant did not contest or contradict this statement.

*Id.*   The Vermont Supreme Court thus concluded that "[t]his record unequivocally demonstrates that defendant entered his pleas voluntarily after consulting with counsel."   *Id.* at *3.

In November 2006, Ala filed a PCR petition that was later dismissed without prejudice.   He filed a second PCR petition in July 2008, claiming that the trial court judge had coerced him into pleading guilty by threatening to impose the maximum sentence if no agreement was reached.   This claim was rejected in the lower court, and again on appeal.

4

Specifically, the Vermont Supreme Court concluded that "as we stated [on direct appeal], the district court's colloquy demonstrated that petitioner's pleas to the charges were entered voluntarily and with knowledge of the consequences." *In re Eejipp Ala*, No. 2009-476, slip op. at 2 (Vt. July Term 2010).

Ala's second argument in the PCR proceeding was that his attorney did not properly challenge the search warrant and failed to interview a key witness. The Vermont Supreme Court found that given Ala's decision not to go to trial, "these allegations cannot result in prejudice . . . ." *Id.*

Ala filed his § 2254 petition on September 22, 2010. The petition asserts four grounds for relief, including: (1) that the evidence against him was obtained by means of an illegal search warrant in violation of his Fourth Amendment rights; (2) that his confession was coerced by both defense counsel and the trial court judge; (3) ineffective assistance of counsel prior to the plea negotiations; (4) trial court error and judicial bias. Respondent has opposed the petition, relying heavily upon the March 15, 2005 transcript, and arguing that Ala is merely trying to re-litigate the issues he raised in the state courts.

## Discussion

When an issue has been decided by the state's highest court, a federal court's power of review under 28 U.S.C. § 2254 is limited. *Wilson v. Mazzuca*, 570 F.3d 490, 499 (2d Cir. 2009) (citing § 2254's "deferential standard of review"). Specifically, under 28 U.S.C. § 2254(d)(1), this Court may grant relief where the relevant state-court decision was either "contrary to . . . clearly established federal law, as determined by the [United States] Supreme Court" or "involved an unreasonable application of . . . clearly established

5

Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000 ).   The Court may also grant relief where the state-court decision resulted "in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

The Second Circuit has held that a "state court decision is 'contrary to' existing Supreme Court precedent (i) when it applies a rule of law 'that contradicts the governing law set forth in' the Supreme Court's cases, or (ii) when it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Supreme Court's] precedent.'" *Lurie v. Wittner*, 228 F.3d 113, 127 (2d Cir. 2000) (citations omitted) (quoting *Williams*, 529 U.S. at 405-06). With respect to the "unreasonable application" prong of Section 2254(d)(1), a "petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." *Lynn v. Bliden*, 443 F.3d 238, 246 (2d Cir. 2006).   The Court may not issue the writ simply because it concludes "that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.   Rather the application must also be unreasonable." *Lurie*, 228 F.3d at 129 (quoting *Williams*, 529 U.S. at 411); *see also Policano v. Herbert*, 507 F.3d 111, 115 (2d Cir. 2007).

**I.      Unlawful Search Warrant**

Ala's first claim is that his convictions were obtained "by use of evidence gained pursuant to an unconstitutional search and seizure."   (Doc. 1 at 4.)   He contends that "[t]he search warrant" used as the basis for entering his home "was based on prior

6

knowledge of an illegal search that took place prior to the issuance of the warrant by the District Court Judge." (*Id.*)  It is not clear that this issue was raised before the Vermont Supreme Court.  Construing the claim liberally, it could be argued that Ala raised the issue in the context of his claim that counsel was ineffective for failing to sufficiently challenge the warrant.  The Vermont Supreme Court dismissed that claim for lack of prejudice.

In any event, the claim is without merit.  First, Ala is barred from challenging unconstitutional acts that preceded his guilty plea.  In *Tollett v. Henderson*, 411 U.S. 258 (1973), the Supreme Court noted that "a guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."  *Tollett*, 411 U.S. at 267.  Thus, a guilty plea "foreclose[s] direct inquiry into the merits of claimed antecedent constitutional violations."  *Id.* at 266.

Furthermore, in *Stone v. Powell*, 423 U.S. 465 (1976), the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Stone*, 428 U.S. at 481-82.  In light of *Stone*, the Second Circuit has determined that Fourth Amendment claims may not be reviewed by a habeas court except under two narrow exceptions: "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the

7

state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992) (citing *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977) (*en banc*)).

Here, Ala has not demonstrated either that the state court failed to offer him corrective procedures, or that there was an "unconscionable breakdown in the underlying process." *Id.* Indeed, Vermont state courts regularly receive and review motions to suppress. *E.g. State v. Muntean*, 12 A.3d 518, 519-20 (Vt. 2010); *State v. Simoneau*, 833 A.2d 1280, 1284 (Vt. 2003). Consequently, if Ala's claim is truly unexhausted, it may be dismissed under 28 U.S.C. § 2254(b)(2) as "plainly meritless." *Rhines v. Weber*, 544 U.S. 269, 277 (2005); 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the administrative remedies available in the courts of the State.").

If the Court construes Ala's claim as part of an ineffective assistance argument, his burden is to "show 'that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence.'" *Mosby v. Senkowski*, 470 F.3d 515, 519 (2d Cir. 2006) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)); *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984) (ineffective assistance of counsel claim requires showing of both deficient performance and prejudice). If he is seeking to withdraw from his guilty plea, he must also show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52,

59 (1985).

Ala has failed to make either showing. Aside from his conclusory claim that the warrant was the product of a prior illegal search, he offers no facts or law to support his position. Furthermore, after the trial court informed Ala of his right to file pre-trial motions, he chose to proceed with his guilty plea. (Doc. 7-2 at 19.) It thus appears that he abandoned his opportunity to move to suppress, and opted instead to bring the criminal matter to a close.

The record also belies any claim that, absent counsel's alleged errors, Ala would have proceeded to trial. At the March 15, 2005 hearing, he confessed to his crimes in open court. (*Id.* at 12.) He then expressed his desire to enter into plea negotiations, notwithstanding his attorney's willingness to go to trial. His attorney negotiated a plea to aggravated assault with a ten to fifteen year sentence, down from the original charge of attempted second-degree murder, which carried a mandatory term of twenty years to life. *See* 13 V.S.A. §§ 9, 2303(a)(2). In light of these facts, Ala cannot now argue that, but for counsel's alleged failure to sufficiently challenge the search warrant, he would have insisted upon a trial on the attempted murder charge. *See Jimenez v. United States*, 2001 WL 699060, at *5 (S.D.N.Y. Jun. 20, 2001) ("Courts have refused to find ineffective assistance of counsel in cases where defendants have received tangible benefits from the plea agreements negotiated by counsel.") (citations omitted). His first claim for relief should therefore be DENIED.

## II.     Coerced Plea Agreement and Denial of Right to Proceed *Pro Se*

Ala next argues that the trial judge and defense counsel both coerced him into

9

entering his guilty plea.  As to counsel, he claims that the plea was based upon "Trial Counsel's scare tactics that he was not going to represent me to the fullest of his ability due to the fact that I was guilty no matter what."  (Doc. 1 at 5.)  With regard to the trial judge, Ala contends that the judge "made threats that he [would] impose the maximum sentence if petitioner would pursue a trial on these charges and also if the petitioner persisted in representing himself during these proceedings."  (*Id.*)

These same claims appear to have been raised in Ala's PCR petition.  *See In re Eejipp Ala*, No. 2009-476, slip op. at 1-2 (Vt. July Term 2010) ("The petition alleged that petitioner entered into the plea agreement because of the trial court's threat to impose the maximum sentence if he did not and his trial counsel's coercive action.").  The Vermont Supreme Court, relying upon the March 15, 2005 transcript, found that Ala's allegations were "false."  (*Id.* at 2.)

The Court first reviews Ala's claim that the trial judge coerced his guilty plea.  At the March 15, 2005 proceeding, the judge asked counsel a series of questions in an effort to identify a date certain for trial.  He then asked: "Has there been any negotiations?  Mr. Ala do you want to negotiate this case or do you want to take your chances?"  (Doc. 7-2 at 12.)  Ala responded: "Well, I'm guilty for shooting at the police officer as well I'm guilty of possession."  (*Id.*)  A discussion then ensued about whether the parties might engage in further negotiations.

Nowhere in the transcript does the judge threaten to impose a maximum sentence if Ala were to proceed to trial.  The court accurately informed Ala that an attempted second-degree murder charge "carries with it a presumptive sentence of 20 years minimum

to life," and suggested that he might be able to "convince the State to reduce that." (Doc. 7-2 at 16.); *see* 13 V.S.A. §§ 9, 2303(a)(2). The court also related to Ala an incident in which a former client had refused to negotiate and ultimately received a long prison sentence. At the conclusion of the story, the judge stated, "[s]o . . . I'm assuming that you can look at your case and you can talk to your lawyer and you can decide whether or not the State has a good case or a bad case. And if the State is willing to negotiate with you or not." (*Id.* at 13.) When the judge reminded Ala that the case was scheduled to go to trial in two weeks, Ala informed the court that an offer had been made to the prosecution, that he was awaiting a response, and that he wanted to "start negotiating." (*Id.* at 14-15.)

The United State Supreme Court has explained that "[w]hile confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable' - and permissible - 'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.'" *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (quoting *Chaffin v. Stynchcombe*, 412 U.S. 17, 31 (1973)); *see also Oyague v. Artuz*, 274 F. Supp. 2d 251, 258 (E.D.N.Y. 2003) (no coercion where court informed defendant that if convicted, he would likely face a 65 years to life sentence). Here, the trial court informed Ala of the maximum sentence for an attempted second-degree murder charge, and offered a cautionary tale regarding the risk of proceeding to trial. Ala ultimately decided to enter his plea, and did not contest the court's finding that the plea was knowing and voluntary.

The Vermont Supreme Court reviewed this same record, and rejected Ala's claim that he was denied his right to trial. That conclusion is fully supported by the March 15,

11

2005 transcript. The state court also concluded that, in view of the March 15, 2005 transcript, Ala's claim of coercion by counsel was unsupported. Indeed, the transcript demonstrates that counsel was concerned about Ala's ability to waive his right to an attorney, played a constructive role in the plea negotiations, and in the event of trial, was prepared to move forward a defense. Accordingly, and particularly in light of § 2254's deferential standard, this Court should find that Ala is not entitled to a writ of habeas corpus on this basis.

Ala next claims that the trial court denied his right to proceed *pro se*. At the outset of the March 15, 2005 hearing, the court reviewed Ala's desire to act as his own lawyer. The court did not, as Ala alleges, threaten to impose the maximum sentence if Ala continued *pro se*. (Doc. 7-2 at 3-5.) Although the court may have been overly-zealous in its warnings ("You will lose your case you know? If you don't get your own lawyer, you will be convicted.") (Doc. 7-2 at 3),[1] Ala's request to proceed *pro se* was never denied. Instead, the court chose to first address procedural matters, including when the case could be set for trial. The court then inquired about plea negotiations.

At that point in the hearing, Ala confessed to his crimes and expressed his desire to negotiate a plea. The court offered that "you want to talk to your lawyer right now. Your

---

[1] Courts are generally instructed to warn defendants about the pitfalls of self-representation in a criminal case. *See United States v. Fore*, 169 F.3d 104, 108 (2d Cir. 1999). In some cases, the warnings predict a lopsided contest, and at least imply a certain result. For example, in *United States v. Hayes*, 231 F.3d 1132, 1139 (9th Cir. 2000), the Ninth Circuit endorsed the following warning as "picturesque: '[T]he prosecution will be represented by an experienced professional counsel who, in turn, will give him no quarter because he does not happen to have the same skills and experience as the professional. In other words, from the standpoint of professional skill, training, education, experience, and ability, it will definitely not be a fair fight. It would be Joe Louis vs. a cripple, or Jack Nicklaus vs. a Sunday hacker.'" (Citation omitted).

12

lawyer is going to go down and talk and he's going to - - [the prosecutor] is here and they will go back and forth."  (*Id.* at 15.)  To this proposal, Ala responded: "Alright."  (*Id.*) Once the negotiation process began, Ala did not again raise the issue self-representation.

In *Faretta v. California*, the Supreme Court held that the Sixth Amendment of the United States Constitution grants a criminal defendant the right to represent himself at trial *pro se*.  422 U .S. 806, 819 (1975).  "[T]he Supreme Court declared that this right may be exercised by all criminal defendants who knowingly, voluntarily, and unequivocally waive their right to appointed counsel."  *Johnstone v. Kelly*, 808 F.2d 214, 216 (2d Cir. 1986) (citing *Faretta*, 422 U.S. at 835-36).  Consequently, in order for a defendant to waive the right to counsel, there must be a request to proceed *pro se* that is clear and unequivocal. *See Williams v. Bartlett*, 44 F.3d 95, 100 (2d Cir. 1994).  "Even if the defendant asserts this right to self-representation, the right may be subsequently waived if the defendant either abandons the request altogether or vacillates on the issue.  If courts allowed equivocal requests, convicted criminals could easily disrupt unfavorable verdicts rendered in trials where they were represented by counsel."  *Rush v. Lempke*, 2011 WL 477807, at *16 (E.D.N.Y. Feb. 2, 2011) (citing *Williams*, 44 F.3d at 100; *United States ex rel. Maldonado v. Denno*, 348 F.2d 12, 16 (2d Cir. 1965)).

The Vermont Supreme Court, citing *Faretta*, concluded that Ala did "not contend that the court coerced him into entering plea negotiations with the aid of counsel."  *State v. Ala*, 2006 WL 5866275, at *2.  As in his direct appeal, it is not clear from his § 2254 petition that Ala is challenging his right to engage in the plea negotiations *pro se*.  Even assuming, however, that his claim does extend to that portion of the case, his position by

that time had become equivocal.  Specifically, when the court suggested that counsel assist him in the negotiation process, Ala acceded, and did not raise the issue of self-representation thereafter.

A habeas court must "indulge every reasonable presumption" against waiver of a right such as the right to counsel.  *See Fowler v. Collins*, 253 F.3d 244, 249 (6th Cir. 2001).  Here, after choosing to negotiate rather than proceed to trial, Ala agreed to the assistance of counsel.  At the very least, his position on the question of continuing *pro se* became equivocal.  The Court should therefore find that the Vermont Supreme Court's application of *Faretta* was not unreasonable, and deny Ala's claim.  *See Faretta*, 422 U.S. at 835-36.

## III.   Ineffective Assistance of Counsel

Ala's third claim falls under the Sixth Amendment's guarantee of effective assistance of counsel.  His claim has six sub-parts, only some of which were presented to the Vermont Supreme Court.  First, he asserts that counsel "failed to investigate the cause of the search warrant and the other issues of this arrest."  (Doc. 1 at 5.)  He also claims that the search warrant was deficient because he was not a resident or owner of the property.  (*Id.*)  His second ineffective assistance claim is related, in that he argues that counsel failed to object to the admission of evidence obtained as a result of the search warrant.

For reasons set forth above, these claims are without merit.  In order to succeed, Ala must show that his Fourth Amendment arguments would have been meritorious and that the result would have impacted the verdict.  *See Mosby*, 470 F.3d at 519.  He has

made no such showing. Instead he offers vague assertions about the "cause of the search" and "issues of this arrest," and claims that his lack of residency was of legal significance. Moreover, as the Vermont Supreme Court properly concluded, he has failed to show prejudice in light of his decision to forego pre-trial motions and instead enter a guilty plea.

Ala's third ineffective assistance claim is that counsel should have argued that the evidence "was insufficient to the charging papers . . . ." (Doc. 1 at 5.) It does not appear that this particular claim was ever raised in the state courts. There is no mention of it in the Vermont Supreme Court's ruling, and the state court dismissed the PCR without discussion. *See In re Eejipp Ala*, No. 2009-476, slip op. at 1-2 (Vt. July Term 2010). Ala's fourth (failure to submit witness list in a timely manner), fifth (failure to properly prepare for trial), and sixth (failure to assert affirmative defenses) ineffective assistance claims also appear to be unexhausted. The Court must therefore determine the fate of these claims.

"An application for a writ of habeas corpus . . . pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement gives the state courts "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 276 (1971) (quotation omitted). In order to completely exhaust state court remedies, a petitioner must have presented his claims "to the highest court of the pertinent state." *Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir.1990). "The burden of proving exhaustion lies with the habeas petitioner." *Cartagena v. Corcoran*, 2009 WL 1406914, at *3 (E.D.N.Y. May 19, 2009)

15

(citing *Colon v. Johnson*, 19 F. Supp. 2d 112, 120 (S.D.N.Y.1998)).

When a claim has not been presented to the state's highest court, a federal court may nonetheless deem the claim exhausted "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001). If a claim is procedurally barred in state court, it may only be considered on federal habeas review upon a showing of cause and prejudice, or upon a showing that a miscarriage of justice will result if the claim is not reviewed. *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991); *Teague v. Lane*, 489 U.S. 288, 298 (1989).

In the appeal of the PCR petition, Ala's counsel argued only that the lower court dismissed his claim prematurely and without adequate explanation. *In re Eejipp Ala*, No. 2009-476, 2010 WL 1867811 (Brief of the Appellant). The Vermont Supreme Court nonetheless reviewed the merits of the PCR petition, and considered Ala's underlying claims that "his counsel did not adequately challenge the search warrant and did not interview a key witness." *In re Eejipp Ala*, No. 2009-476, slip op. at 2. There is no indication of any other ineffective assistance arguments having been raised in the initial PCR petition or on appeal.

If Ala were to try to bring his remaining ineffective assistance claims in state court, he would need to do so in a second collateral proceeding. *See In re Laws*, 182 Vt. 66, 72, 928 A.2d 1210, 1214-15 (2007). Under Vermont law, however, a second PCR petition may be considered "abuse of the writ" and can be denied under 13 V.S.A. § 7134, which states that a court is "not required to entertain a second or successive motion for similar

16

relief on behalf of the same prisoner."  *Id.*, 928 A.2d at 1215.  In order to avoid the § 7134 bar, Ala would need to show cause for his failure to raise the claims initially, and actual prejudice resulting therefrom.  *Id.* at 77, 928 A.2d at 1218.  Cause requires a showing "'that some objective factor external to the defense impeded counsel's efforts to raise the claim.'"  *Id.* (quoting *McCleskey v. Zant*, 499 U.S. 467, 492 (1991)).  Examples would include "situations where a factual or legal basis for a claim was not available at the time of the earlier proceeding, instances of official interference . . . or ineffective assistance of counsel."  *Id.* (citing *McCleskey*, 499 U.S. at 493-94).  Actual prejudice requires a showing that the errors "'infect[ed] the entire trial with error of constitutional dimensions.'"  *Id.* (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

Ala contends that he exhausted all of his state court remedies.  (Doc. 10 at 2.)  Consequently, he does not explain why he failed to raise several of his ineffective assistance claims before the Vermont Supreme Court.  Specifically, he has made no effort to show either cause for his failure to raise all of his arguments, or actual prejudice.  Accordingly, the Court should find that any effort to bring those same claims again in state court would be procedurally barred.  *See, e.g., Nobles v. Johnson*, 127 F.3d 409, 422-23 (5th Cir. 1997).

When unexhausted claims are procedurally barred in state court, they may be dismissed by the federal court.  *St. Helen v. Senkowski*, 374 F.3d 181, 183 (2d Cir. 2004).  To avoid a procedural default in federal court, Ala must again "show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claims will result in a 'fundamental miscarriage of justice,' *i.e.*, a showing of 'actual

17

innocence.'"  *Harris v. Reed*, 489 U.S. 255, 262 (1989) (citations omitted); *accord, Schlup v. Delo*, 513 U.S. 298, 324-27 (1995); *see also Messiah v. Duncan*, 435 F.3d 186, 195 (2d Cir. 2006).  Use of the fundamental miscarriage of justice exception is "extremely rare," and should be applied only in "extraordinary circumstances."  *See Sweet v. Bennett*, 353 F.3d 135, 142 (2d Cir. 2003) (citing *Schlup*, 513 U.S. at 321-22).

Ala has not made the required cause and prejudice showings.  Nor does he urge the Court to excuse his procedural defaults on the basis of a fundamental miscarriage of justice.  Indeed, he admitted his guilt in open court at the March 15, 2005 hearing.  Given his in-court confession, there is little support for a claim that counsel's ineffective assistance led to a fundamental miscarriage of justice.  Ala's remaining ineffective assistance claims should therefore be DENIED.

## IV.     Trial Court Error

Ala's final ground for relief is that the trial court committed several errors.  Like his ineffective assistance of counsel claim, this claim contains several sub-parts, only some of which were raised in the state courts.

Ala first contends that the trial judge denied him his right to represent himself, as well as his request for a speedy trial.  The self-representation claim is discussed above, and does not constitute a basis for relief under § 2254.  The speedy trial issue is not mentioned in either of the Vermont Supreme Court's decisions, and thus appears to be unexhausted.  Ala shows no cause for his failure to raise the issue before the Vermont Supreme Court, and no prejudice resulting from that failure.  *See In re Laws*, 182 Vt. at 77, 928 A.2d at 1218.  His claims would thus be procedurally barred in state court, and should

18

be DENIED here for failure to meet the federal cause and prejudice standard. *See Harris*, 489 U.S. at 262. This same analysis applies to Ala's claim, not previously raised before the Vermont Supreme Court, that the judge was "biased to the fact that petitioner was not well considered a pillar of the community." (Doc. 1 at 6.)

Finally, Ala asserts that the trial judge threatened to impose "the full maximum sentence on this matter." (*Id.*) He offers no citation to the record, and the March 15, 2005 transcript contains no such threat. Moreover, the claim is unexhausted, procedurally barred, and in the absence of the required cause and prejudice showings, ineligible for federal habeas review. The petition for writ of habeas corpus on the basis of trial court errors should therefore be DENIED.

## Conclusion

For the reasons set forth above, I recommend that Respondent's motion for summary judgment (Doc. 7) be GRANTED, that Ala's petition for writ of habeas corpus (Doc. 1) be DENIED, and that this case be DISMISSED.

Dated at Burlington, in the District of Vermont, this 4th day of April, 2011.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c). Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation. *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).